THE EASTERN SPORTSWEAR COMPANY *v.* S. AUGSTEIN AND COMPANY, INC., ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and SHANNON, Js.

Argued June 2—decided July 7, 1954

*John W. Joy,* with whom, on the brief, was *George Cutler,* for the appellant (plaintiff).

*Leonard T. Calvert,* for the appellee (named defendant).

DALY, J.  The plaintiff brought this action to recover a balance claimed to be due from the defendants.  The court rendered judgment for the plaintiff against the named defendant upon the complaint. The defendants, in a counterclaim, alleged that, in another transaction, they engaged the plaintiff to manufacture dresses and that 692 of them were defective and as a result the defendants suffered a

loss in their sale. Judgment was rendered for the named defendant to recover $2897.18 on the counterclaim, and the plaintiff has appealed.

In its assignment of errors, the plaintiff claims that the court erred in refusing to find material facts as set forth in forty-six paragraphs of its draft finding, and in finding, without evidence, certain facts set forth in twenty-four paragraphs of the finding. Some of these claims refer to immaterial facts. Many of them relate to facts found which were supported by evidence. The others have to do with facts which the plaintiff claims were admitted and undisputed because the named defendant, hereinafter called the defendant, offered no evidence to contradict statements made by the plaintiff's witnesses. "Absence of direct contradiction by the mouth of a witness does not make a fact undisputed within the meaning of the rule. . . . The trial court is at liberty to discredit any witness or multitude of witnesses, if it deems that it has cause to do so. It is one of the important functions of a trier to determine the relative credit to be given to oral evidence. Otherwise false testimony would be a more serious factor in the administration of justice than it now is." *Allis* v. *Hall,* 76 Conn. 322, 340, 56 A. 637; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 541, 129 A. 527; *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 730, 97 A.2d 562. The method pursued by the plaintiff has been frequently criticized by this court as an attempt to substitute the draft finding for the major part of the finding as made. "This method does not commend itself. . . ." *K. B. Noble Co.* v. *Popielarczyk,* 125 Conn. 699, 701, 8 A.2d 33. No correction can be made which is material to the appeal.

The finding may be summarized as follows: The

plaintiff is in the business of manufacturing women's dresses. During 1948 and 1949, it agreed to make dresses for the defendant. The latter furnished the fabrics, which were cut in various styles designated by numbers. The plaintiff manufactured 3421 dresses of style No. 1227 and 1154 dresses of style No. 1238. These were received and paid for by the defendant. They were inspected upon arrival, and it was discovered that 142 of style No. 1238 and 550 of style No. 1227 were defective. The defects, known as "needle chews," consisted of punctures visible to the naked eye. They were caused by an improper adjustment of the needles on the plaintiff's shirring machines. The dresses were unmarketable as regular merchandise, and the faulty portions of them could not have been replaced satisfactorily. Shortly before the manufacture of the garments started, the defendant's representative instructed the plaintiff's manager as to the proper method of adjusting the needles. Repair by the use of remnants would have required a great deal of labor, and remnants often fail to match the balance of the dress in appearance. As the screens used for printing the design on the cut pieces of the two styles were destroyed at the end of the defendant's selling season, they would not have been available for printing additional cloth. The defendant informed the plaintiff of the defects as soon as they were discovered and then carefully packed and stored the defective dresses to prevent spoilage. The defendant's garments are sold under a well-known brand name and are known to retailers and the public by the defendant's patterns and the brand name. The defective dresses were unfit for merchandising through the defendant's regular outlets. The sale of faulty goods in the defendant's patterns would adversely affect its valuable business relations

with its retail outlets and the public and would damage its good will.

The defendant began an attempt to sell the dresses in May, 1949. Their sale, in order to minimize damage to the defendant's good will, could be best accomplished by sales outside the country or to domestic retail outlets catering to customers who were not in the market for the defendant's regular merchandise. After unsuccessful attempts to sell the dresses abroad, the defendant solicited bids for them from four such domestic retailers. The highest offer was made by Filene's in Boston for sale of the dresses in its basement store. After the labels were removed, 139 dresses of style No. 1238, costing $8.72 each, and 539 of style No. 1227, costing $6.90 each, were sold to Filene's at $3 each. The defendant's employee who sold the dresses had had long experience in the sale of defective merchandise and the buying and selling of dresses in New England. The plaintiff attempted to purchase the dresses but offered no specific price and did not tell the defendant either the names of the retail stores or the territory in which they would be sold. The defendant refused to sell them to the plaintiff, since a public sale would have had an adverse effect upon the defendant's regular retail outlets and upon its future business relations with them. The period for selling summer dresses, as these were, extends through the month of June. The plaintiff knew that the defendant had intended to sell the dresses, if not defective, under its well-known brand name. The loss to the defendant was $2897.18. The court concluded that the dresses were defective as the result of careless or improper operations, that the defendant gave the plaintiff timely notice of the defects, that the defendant made a reasonable attempt to minimize damages in its sale of the dresses, and

that it was justified in refusing to allow the plaintiff to sell them.

The plaintiff claims that the defendant accepted the defective garments and paid for them, knowing of the defects, and that therefore it has no claim for damages. The relationship between the parties was not that of seller and buyer. The plaintiff's undertaking was to perform labor for the defendant. The acceptance of the dresses did not amount to a waiver of the defects. Payment made may or may not affect the contractual relations of the parties, according to the circumstances of the case. *Burr* v. *Ellis,* 91 Conn. 657, 660, 101 A. 17; *Pratt* v. *Dunlap,* 85 Conn. 180, 185, 82 A. 195; *Flannery* v. *Rohrmayer,* 46 Conn. 558, 560. Furthermore, waiver is a defense which must be pleaded. Practice Book § 102; *Reardon* v. *Mutual Life Ins. Co.,* 138 Conn. 510, 519, 86 A.2d 570; *Fields* v. *Metropolitan Life Ins. Co.,* 132 Conn. 588, 592, 46 A.2d 127; *Crawford Clothes, Inc.* v. *65 Bank Street Realty Co.,* 129 Conn. 682, 686, 30 A.2d 914. This the plaintiff did not do. We cannot say that the court erred in not concluding that the defendant waived its claim for damages.

The plaintiff asserts that the defendant, in selling the defective dresses as it did, failed to minimize the damages. The duty of the defendant to keep the damages as low as reasonably possible did not require it to disregard its own interests or exalt those of the plaintiff above them. The defendant was not under an obligation to sacrifice any substantial right of its own in order to minimize the loss. It was not required to take a course that would to a material extent adversely affect the good will of its business. *Frederick Raff Co.* v. *Murphy,* 110 Conn. 234, 243, 147 A. 709; *Bridgeport* v. *Aetna Indemnity Co.,* 93 Conn. 277, 285, 105 A. 680. The

trial court's conclusion, which was supported by evidence, that the defendant, in doing what it did, made a reasonable attempt to minimize the damages amounted to a determination that it was justified in not returning the defective dresses to the plaintiff for replacement of the defective portions and in not selling them to the plaintiff. The court did not err in concluding that the defendant made a reasonable attempt to minimize the damages.

There is no error.

In this opinion the other judges concurred.